**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AQUEEL AHMED, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 13-3017 |
| v. | : | |
| | : | |
| ERIC HOLDER, et al. | : | |
| Defendants. | : | |

March __18__ , 2014                                        **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

Plaintiff Aqueel Ahmed seeks to compel adjudication of his application for adjustment of immigration status from that of asylee to lawful permanent resident.  Defendants, all government officials sued in their official capacities, move to dismiss Ahmed's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  In the alternative, Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  I will grant in part and deny in part the motion to dismiss for the reasons discussed below.  With respect to the motion for summary judgment, while I agree with Defendants that there are no material issues of fact remaining for trial, I find that Ahmed is entitled to an order requiring Defendants to adjudicate his application on or before 120 days from my judgment in this case.

**FACTUAL AND PROCEDURAL BACKGROUND**

Ahmed is a native and citizen of Pakistan.  Compl. ¶ 30.  In 1991, Ahmed joined the Mohajir Qaumi Movement (MQM), a student movement that defends the rights of Mohajirs, Urdu-speaking Muslims in Pakistan.  Compl. ¶¶ 1, 35.  At that time, Ahmed collected donations

for the organization and volunteered his time to disseminate the organization's political beliefs. Compl. ¶ 35.

In 1997, Ahmed fled from Pakistan to the United States and sought asylum on the basis of government persecution for his involvement with the MQM.  Compl. ¶ 35.  During both his asylum interview and immigration hearing, Ahmed fully disclosed his involvement with and work on behalf of the MQM.[1]  Compl. ¶ 36.  On December 2, 1998, an immigration judge granted his request for asylum.  Compl. ¶¶ 36, 38.

After an initial denial on unrelated grounds, on February 14, 2006, Ahmed filed a Form I-485 application for adjustment of immigration status to legal permanent resident.  Compl. ¶¶ 39-41.  On February 13, 2008, the United States Citizenship and Immigration Services ("USCIS") denied Ahmed's application on the basis that he was a current member of the MQM-A.[2]  Compl. Ex. 5, at 3.  UCSIS found that the MQM, and its factions the MQM-A and MQM-H, met the contemporary definition of an undesignated or "Tier III" terrorist organization under the Immigration and Naturalization Act ("INA").  Compl. Ex. 5, at 4; *see* 8 U.S.C. § 1182(a)(3)(B)(vi)(III).  Although the immigration judge that had granted Ahmed asylum had found him admissible, Ahmed was now inadmissible as an alien who "has engaged in a terrorist activity," 8 U.S.C. § 1182(a)(3)(B)(i)(I), and an alien who is a representative of a "group that endorses or espouses terrorist activity," 8 U.S.C. § 1182(a)(3)(B)(i)(IV).  *Id*.  Since the time of Ahmed's grant of asylum in 1998, the USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat. 272 (2001), and the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 302 (2005), expanded the terrorism-related grounds under which aliens may be deemed inadmissible.  Additionally, the Consolidated

---

[1] The parties agree that Ahmed's involvement with the MQM ended when he left Pakistan in 1997.  Compl. ¶ 31; Def. Mot. Ex. 1 ¶ 12.
[2] By 1999, the MQM had splinted into factions, including violent groups known as the MQM-A and the MQM-H. Compl. ¶ 33; Def. Mot. Ex. 1 ¶ 13-14.

Appropriations Act of 2008 ("CAA"), Pub. L. No. 110-161, 121 Stat. 1844 (2008), amended the authority of the Secretary of Homeland Security to exempt individuals and organizations from certain terrorist-related inadmissibility grounds under 8 U.S.C. § 1182(d)(3)(B)(i).  Def. Mot. Ex. 1 ¶ 11.

Ahmed requested that UCSIS reopen his case, and on April 30, 2008, USCIS agreed to do so.  Compl. Ex. 6.  USCIS simultaneously placed Ahmed's application on administrative hold pursuant to a series of USCIS policy memoranda setting forth procedures for applications that may potentially benefit from the Secretary of Homeland Security's exemption authority.  Compl. Ex. 6; Def. Mot. Ex. 1 ¶ 20-22; Def. Mot. Ex. 2-4.  Ahmed's application remains on hold today. Ahmed alleges that during this time he has been unable to travel freely, unable to bring his family members to the United States, and subject to unfounded suspicion from friends who question why he is not yet a permanent resident.  Compl. ¶¶ 7, 50.  This delay also impacts Ahmed's ability to seek United States citizenship.  Compl. ¶ 5l; *see* 8 U.S.C. § 1427(a) (providing that a permanent resident may not apply for citizenship until he or she has resided continuously in the United States for five years preceding the date of the filing of his or her application).

Ahmed seeks relief on three counts.  The Complaint's first two counts allege that Defendants' continued hold on his application constitutes unlawful withholding of adjudication and unreasonable delay in violation of the INA, 8 U.S.C. § 1101 et seq.; the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 555(b) and 706; and U.S. obligations under international law.  Ahmed seeks an injunction requiring Defendants to adjudicate his application on or before 30 days from the Court's judgment in the case.  Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Ahmed also seeks a declaratory judgment that he is eligible for adjustment of

status.  In the alternative, he seeks an injunction preventing Defendants from further delaying review of his case for an individualized exemption and a declaratory judgment that he is eligible for consideration for an individualized exemption.  He seeks the same relief under the mandamus statute, 28 U.S.C. § 1361.[3]  The third count of the Complaint alleges that withholding adjudication of his application, including the failure to hold a hearing on the issue of his inadmissibility, is a denial of due process under the Fifth Amendment of the U.S. Constitution.

Defendants move to dismiss Ahmed's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), contending that USCIS's decision to hold his adjustment of status application in abeyance is a discretionary decision that falls outside of the Court's jurisdiction under the INA's jurisdiction-stripping provisions at 8 U.S.C. § 1252(a)(2)(B)(ii).  Defendants also move to dismiss on the basis of failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) because there is no due process right to a discretionary immigration benefit and because the delay in this case has not prejudiced Ahmed.  In the alternative, Defendants move for summary judgment as a matter of law because the delay is not unreasonable.

---

[3] A claim seeking mandamus under the Mandamus Act is essentially the same as one for relief under Section 706 of the APA.  *Independence Mining Co., Inc. v. Babbitt,* 105 F.3d 502, 507 (9th Cir. 1997) (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc'y,* 478 U.S. 221, 230 n. 4 (1986)) (electing to analyze plaintiff's entitlement to relief under the APA); *see also Han Cao v. Upchurch*, 496 F. Supp. 2d 569, 575 (E.D. Pa. 2007) ("Most of the courts that have addressed the issue agree that, for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are coextensive.").  Accordingly, I will address only the APA claim.

## ANALYSIS

## I.  MOTION TO DISMISS

### A.  Legal Standard

#### 1.  Rule 12(b)(1) Standard

A federal district court has limited subject matter jurisdiction.  Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of subject matter jurisdiction over the subject matter.  A Rule 12(b)(1) challenge may be either a factual or facial challenge to the complaint.  *See Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir. 1977).  In the case of a factual challenge, the court is free to consider and weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction and to satisfy itself as to the existence of its power to hear the case.  *See id.*  Therefore, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Id.*  The plaintiff has the burden of proving that jurisdiction exists.  *See Mortensen,* 549 F.2d at 891.

#### 2.  Rule 12(b)(6) Standard

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B.  Ahmed's Claims under the APA

Ahmed first alleges that Defendants' continued hold on his adjustment application constitutes unlawful withholding of adjudication and unreasonable delay in violation of the APA.

#### 1.  Dismissal for Lack of Subject Matter Jurisdiction –  Rule 12(b)(1)

##### A.    Court Has Jurisdiction

Unless otherwise precluded, 28 U.S.C. § 1331 provides federal jurisdiction over any action brought against any officer of the United States in his official capacity.  Thus, although the APA does not provide an independent basis for subject matter jurisdiction, federal courts may entertain challenges to unreasonably delayed agency action on the basis of § 1331.  *Califano v. Sanders*, 430 U.S. 99, 105 (1977); *see* 5 U.S.C. § 706(1) (Federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed.").  The APA compels agencies "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time . . . [to] proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  Congress need not have set a definitive deadline for an agency to act in order for a court to find a delay in agency action unreasonable; § 706(1) mandates that all action be done within a reasonable amount of time.  *See Pub. Citizen Health Research Grp. v. Chao,* 314 F.3d 143, 152 (3d Cir. 2002) (compelling agency to proceed with rulemaking although enabling legislation set no specific deadline for agency to do so).  However, the "only agency action that can be

compelled under the APA is action legally *required*." *Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 63 (2004).

"[C]ourts have specifically recognized jurisdiction under § 1331 and the APA to hear challenges to INS delays in processing visa, LPR, and citizen applications." *Yu v. Brown,* 36 F. Supp. 2d 922, 930 (D.N.M. 1999). Although the ultimate decision whether to grant adjustment of status is entrusted to the discretion of the Secretary of Homeland Security or the Attorney General, "numerous courts have found that immigration authorities have a non-discretionary duty to adjudicate applications." *Hoo Loo v. Ridge*, No. 04-5553, 2007 WL 813000, at *3 (E.D.N.Y. Mar. 14, 2007) (collecting cases); *see Tang v. Chertoff*, 493 F. Supp. 2d 148, 155 (D. Mass. 2007) ("A grant of adjustment of status is not 'legally required,' but adjudication of the application one way or the other certainly is."); *Yu*, 36 F. Supp. 2d at 931 (D.N.M. 1999) ("All other courts addressing this question have held that INS has a non-discretionary duty to process applications for LPR status as well as all other immigration applications."). In their analysis, these courts have relied on the mandatory language in the regulations governing USCIS procedures for adjustment of status to legal permanent resident. *See Yu*, 6 F. Supp. 2d at 931 ("The Code of Federal Regulations further provide[s] that each 'applicant for adjustment of status *shall* be required to have a medical examination,' 8 C.F.R. § 245.5; that '[e]ach applicant for adjustment of status under this part *shall* be interviewed by an immigration officer,' 8 C.F.R. § 245.6; and, most importantly, that 'the applicant *shall* be notified of the decision of the director, and, if the application is denied, the reasons for the denial,' 8 C.F.R. § 245.2.").

Additionally, although the statute and regulations governing adjustments of status do not provide for a time frame within which USCIS must adjudicate applications, the government does not have limitless discretion concerning the timing of processing of applications. *Al-Rifahe v.*

*Mayorkas*, 776 F. Supp. 2d 927, 934 (D. Minn. 2011); *Kim v. Ashcroft,* 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) ("[T]he CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely.  This result is explicitly foreclosed by the APA.").  Instead, the APA requires that applications be processed in a reasonable time. *See* 5 U.S.C. § 555(b); *Yu*, 36 F. Supp. 2d at 931-32 ("Defendants fail to comprehend that the APA itself imposes on them the duty to complete action on Plaintiffs' application within a reasonable time."); *Alkenani v. Barrows,* 356 F. Supp. 2d 652, 657 (N.D. Tex. 2005) ("[USCIS has] a clear duty to process petitioner's application for naturalization within a reasonable time."). Thus, this Court has jurisdiction over Ahmed's claims seeking to compel agency action.

**b.  INA Does Not Strip Court of Jurisdiction**

Defendants argue that pursuant to the INA's jurisdiction-stripping provisions at 8 U.S.C. § 1252(a)(2)(B)(ii), Congress has divested the courts of jurisdiction over immigration suits that concern decisions or actions committed to agency discretion.  Defendants argue that the pace of USCIS's decisions over how and when to proceed with adjustment of status applications is discretionary for purposes of the statute.

Under a section captioned "Matters not subject to judicial review" and a subsection headed "Denials of discretionary relief," the INA provides that:

> [N]o court shall have jurisdiction to review—
>
> (i)     any judgment regarding the granting of relief under
>          section 1182 (h), 1182 (i),1229b, 1229c, or 1255 of this title
>          [substantive decisions regarding removal or adjustment of status
>          within the discretion of the Attorney General], or
>
> (ii)    any other decision or action of the Attorney General or the Secretary
>          of Homeland Security the authority for which is specified under this
>          subchapter to be in the discretion of the Attorney General or the
>          Secretary of Homeland Security, other than the granting of relief under
>          section 1158(a) of this title ["Authority to apply for asylum"].

8 U.S.C. § 1252(a)(2)(B).  If the decision by USCIS to place a hold on Ahmed's application for adjustment of status was a "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under" Title 8, Chapter 12, Subchapter II "to be in the discretion of the Attorney General or the Secretary of Homeland Security," then I must dismiss the case for lack of subject matter jurisdiction.  *Id.*

Many district courts have addressed this question, identifying two elements of the inquiry.[4]  *Geneme v. Holder*, 935 F. Supp. 2d 184, 189 (D.D.C. 2013).  First, courts determine whether USCIS has made a decision or taken an action.  Here, Ahmed's application has been formally placed on hold, and there is no question that USCIS has made a decision with regard to his application.  *See Geneme*, 935 F. Supp. 2d at 190; *Seydi v. USCIS,* 779 F. Supp. 2d 714, 719-20 (E.D. Mich. 2011) (noting that USCIS had not "simply permitt[ed] Plaintiff's application to languish without consideration or action" by putting it on hold).

The second question is whether "the authority for" that decision "is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security" as transferred to USCIS.  *See* 8 U.S.C. § 1252(a)(2)(B)(ii).  On one hand, the ultimate decision whether to adjust the status of an alien who has been granted asylum is certainly discretionary under the relevant subchapter.  *See* 8 U.S.C. § 1159(b) ("The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any

---

[4] The two federal appellate courts that have addressed the issue have reached contradictory results.  In *Debba v. Heinauer*, 366 Fed.Appx. 696 (8th Cir. 2010), the Eighth Circuit affirmed a district court decision that "apparently concluded that it had subject-matter jurisdiction." *Id.* at 698.  That court did not conclude whether jurisdiction was proper because it found that, whether or not there was jurisdiction, the plaintiff had not established that the delay in adjudication was unreasonable. *Id.* at 699.  The Fifth Circuit, on the other hand, found that neither the APA nor the Mandamus Act provided jurisdiction over a claim of unreasonable delay in adjudication and that the INA foreclosed any such jurisdiction. *Bian v. Clinton*, 605 F.3d 249, 255 (5th Cir. 2010), *vacated as moot,* 2010 WL 3633770 (5th Cir. 2010).

alien granted asylum who" meets certain statutory requirements).[5]  Courts finding themselves stripped of jurisdiction have grounded their rulings in USCIS's explicit discretion to make decisions about the adjustment of an alien's status and its authority to prescribe regulations governing the consideration of such applications.  *See Orlov v. Howard*, 523 F. Supp. 2d 30, 35 (D.D.C. 2007) ("In the absence of statutorily prescribed time limitations or statutory factors to guide USCIS in crafting regulations for the adjustment process, it is difficult to determine how the pace of processing an application could be anything other than discretionary.").

However, many other courts—"the overwhelming majority of district courts," one judge has suggested, *Hassane v. Holder*, No. 10-3142, 2010 WL 2425993, at *3 (W.D. Wash. June 11, 2010)—have found that 8 U.S.C. § 1252(a)(2)(B)(ii) does not apply to all discretionary decisions, "but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion."  *Alaka v. Attorney General,* 456 F.3d 88, 95 (3d Cir. 2006) (finding that 8 U.S.C. § 1252(a)(2)(B)(ii) did not strip the court of jurisdiction to review an agency determination that an alien was ineligible for withholding of removal for having been convicted of a particularly serious crime).

This approach is supported by the Supreme Court's decision in *Kucana v. Holder,* 558 U.S. 233 (2010), involving the applicability of 8 U.S.C. § 1252(a)(2)(B)(ii) to denials of motions to reopen deportation hearings.  Authority for a denial is based on a regulation created by the Attorney General.  Reading clauses (i) and (ii) of the "Denials of discretionary relief" subsection, the Court found that "both clauses convey that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the

---

[5] The same is true of the Secretary's authority to grant a waiver of inadmissibility.  *See* 8 U.S.C. § 1182(d)(3)(B)(i) ("[T]he Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine in such Secretary's sole unreviewable discretion that subsection (a)(3)(B) of this section shall not apply with respect to an alien within the scope of that subsection or that subsection (a)(3)(B)(vi)(III) of this section shall not apply to a group within the scope of that subsection . . . .").

statute." *Id.* at 247. "If Congress wanted the jurisdictional bar to encompass decisions specified as discretionary by regulation along with those made discretionary by statute, . . . Congress could easily have said so." *Id.* The Court also noted that the decisions enumerated by Congress in clause (i) "are substantive decisions made by the Executive in the immigration context as a matter of grace, things that involve whether aliens can stay in the country or not." *Id.* The Court found that the other decisions shielded from judicial review in clause (ii) were "of a like kind." *Id.* at 248. In contrast, a decision on a reopening motion is "a procedural device serving to ensure that aliens are getting a fair chance to have their claims heard" which a court could reverse without "direct[ing] the Executive to afford the alien substantive relief." *Id.* Finally, the *Kucana* Court also invoked a well-known canon of construction: the presumption favoring judicial review of administrative action. *Id.* at 251. *See also INS v. St. Cyr,* 533 U.S. 289, 298 (2001) (stating that despite specific jurisdiction-denying provisions, in immigration cases there exists a "strong presumption in favor of judicial review of administrative action").

The *Kurana* decision echoes the same reasoning from an earlier Third Circuit opinion that found that 8 U.S.C. § 1252(a)(2)(B)(ii) did not bar review of an immigration judge's decision to grant a continuance of a removal proceeding where the statute in question made no mention of continuances. *Khan v. Atty. Gen. of U.S.*, 448 F. 3d 226, 232 (3rd Cir. 2006). "To specify," the court noted, means "to state explicitly or in detail." *Id.* at 233. Finding jurisdiction, the *Khan* court emphasized: "The statutory language is uncharacteristically pellucid on this score: it does not allude generally to 'discretionary authority' or to 'discretionary authority exercised *under this statute*,' but specifically to 'authority for which it is *specified under this subchapter* to be in the discretion of the Attorney General.' " *Id.* at 232 (quoting *Zhao v. Gonzales,* 404 F.3d 295, 303 (5th Cir. 2005)).

In the current case, neither the discretionary authority to determine the pace of application processing nor the discretionary authority to withhold adjustment applications is "specified under" the relevant subchapter.  *See Duan v. Zamberry*, No. 06-1351, 2007 WL 626116, at \*2 (W.D. Pa. Feb. 23, 2007) (The subchapter "does not address, much less specify any discretion associated with, the pace of application processing."); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 153-54 (D. Mass. 2007) ("Despite the care taken in the INA to specify the *substance* of an adjustment of status decision as discretionary, the *pacing* of such a decision is not so specified.").  Therefore jurisdiction over a claim that adjudication has been unreasonably delayed is not barred by the INA's jurisdiction-stripping provision, and this Court retains jurisdiction over Ahmed's claim that USCIS has unreasonably delayed the adjudication of his application.

### 2.   Dismissal for Failure to State a Claim – Rule 12(b)(6)

Defendants also argue that Ahmed's claim should be dismissed for failure to state a claim because he has not alleged one of the necessary factors required to meet the standard for unreasonable delay under the APA.  *See* 5 U.S.C. § 706(1).  To determine the reasonableness of a delay under the APA, courts consider the six factors articulated in *Telecommunications Research and Action Center v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984):  (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also

take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.  *Id*. at 80 (internal citations and quotation marks omitted).

Defendants' motion to dismiss under Rule 12(b)(6) specifically argues that Ahmed has not plead sufficient allegations with respect to the fifth prong of the test—interests prejudiced by the delay.  Ahmed alleges that during the delay in the processing of his application, he has been unable to travel freely, unable to bring his family members in Pakistan to the United States, and subject to unfounded suspicion from friends who question why he is not yet a permanent resident.  Compl. ¶¶ 7, 50.  This delay also negatively impacts Ahmed's ability to seek United States citizenship.  Compl. ¶ 5l; *see* 8 U.S.C. § 1427(a) (providing that a permanent resident may not apply for citizenship until he or she has resided continuously in the United States for five years preceding the date of filing the application).

In *Singh v. Still*, 470 F. Supp. 2d 1064 (N.D. Cal. 2007), the court found "substantial" prejudice to a petitioner under similar facts because the "inability to obtain permanent resident status affects a wide range of important rights, including but not limited to travel and the ability petition to immigrate [sic] close family members (a right that is often of special importance to asylees)."  *Id*. at 1070.  The court also noted the delay's negative impact on the petitioner's ability to avail himself of the "all the rights and privileges attendant" to citizenship.  *Id*. (citing *Ngwanyia v. Ashcroft*, 302 F. Supp. 2d 1076, 1079 (D. Minn. 2004) ("Because lawful-permanent-resident status is a prerequisite for naturalization, any delay in adjustment inevitably postpones an asylee's ability to apply for citizenship.")).  These allegations are sufficient to survive Defendants' motion to dismiss.

### B. Ahmed's Claim under the Declaratory Judgment Act

Ahmed also seeks a declaratory judgment that he is eligible either for adjustment of status based on the *res judicata* application of the determination of his admissibility at the time he was granted asylum or for consideration by the Attorney General and Secretary of Homeland Security for an individualized exemption to the inadmissibility statute pursuant to 8 U.S.C. § 1182(d)(3)(B)(i)).

#### 1. Dismissal for Lack of Subject Matter Jurisdiction – Rule 12(b)(1)

Defendants argue that the Court lacks subject matter jurisdiction over this claim because the Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide a basis for federal subject matter jurisdiction over Ahmed's request for an eligibility determination.  However, in a similar case seeking a declaratory judgment that the denial of adjustment of status was arbitrary, capricious and unlawful, the Third Circuit found jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 704 to review a petitioner's statutory eligibility for adjustment.  *Pinho v. Gonzales*, 432 F.3d 193, 200 (3d Cir. 2005).  Describing the distinction as "central to the question of subject-matter jurisdiction," the court explained that an eligible immigrant may have his application denied within the discretion of the agency while the immigrant's eligibility itself is determined by statute.  *Id*. at 203.  "Determination of *eligibility* for adjustment of status—unlike the *granting* of adjustment itself—is a purely legal question and does not implicate agency discretion."  *Id*. at 204.  To have jurisdiction over an eligibility determination, "the agency action must be final, it must adversely affect the party seeking review, and it must be non-discretionary."  *Id*.

The finality requirement requires that (1) "the action must mark the consummation of the agency's decisionmaking process;" and (2) "the action must be one . . . from which legal consequences will flow."  *Bennett v. Spear,* 520 U.S. 154, 178 (1997) (internal quotations and

citations omitted).  In addition, the Third Circuit has confirmed, "If there remain steps that the immigrant can take to have an action reviewed within the agency, then the action is not final and judicial review is premature."  *Pinho*, 432 F.3d at 200.  The agency action here clearly does not meet the finality requirement because the decision to place an adjudicatory hold on Ahmed's application does not mark the consummation of USCIS's process.  Because the agency action at issue here is not final, I do not have jurisdiction to issue a declaratory judgment regarding Ahmed's eligibility for an adjustment of status or an individualized exemption to the inadmissibility statute.

### C.  Ahmed's Claim under the Due Process Clause

Finally, the third count of Ahmed's Complaint alleges that withholding adjudication of his application, including the failure to hold a hearing on the issue of his ineligibility, is a denial of due process under the Fifth Amendment of the U.S. Constitution.

### 1.  Failure to State a Claim – 12(b)(6)

Defendants argue that Ahmed fails to state a Fifth Amendment claim because an alien does not have a due process right to a discretionary immigration benefit.  The Supreme Court has said that when the decision to grant or withhold a benefit is entrusted to the discretion of a government actor, one has no constitutional property interest in obtaining that relief.  *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981).  Furthermore, the Third Circuit has held that "a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie."  *Mudric v. Att'y Gen.*, 469 F.3d 94, 98 (3d Cir. 2006).   In this case, the ultimate decision to grant the adjustment of status is entrusted to the discretion of the Secretary of Homeland Security or the Attorney General.  8 U.S.C. § 1159(b).  Thus, Ahmed has no due

process right to relief, and the motion to dismiss Ahmed's violation of due process will be granted.

## IV. MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

Summary judgment is appropriate under Rule 56 when the pleadings and evidence demonstrate that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.  R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The moving party bears the burden of establishing both the absence of a genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  *Anderson*, 477 U.S. at 247; *Celotex*, 477 U.S. at 322.  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  However if it finds that there are no material issues of fact remaining for trial, the Court, after giving notice and reasonable time to respond, may enter summary judgment for the non-moving party.  Fed. R. Civ. P. 56(f)(1); *see Nat'l Expositions, Inc. v. Crowley Mar. Corp.*, 824 F.2d 131, 133 (1st Cir. 1987) ("[A] district court has the legal power to render summary judgment . . . in favor of the party opposing a summary judgment motion even though he has made no formal cross-motion under rule 56.") (internal quotation marks omitted) (citing 10A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 2720 (3d ed. 1998)).

## B. Ahmed's Claim under the APA

Defendants argue that summary judgment in their favor is warranted because there is no dispute of material facts in this case, and the delay in processing a complex application for adjustment of status is not unreasonable as a matter of law.  As discussed above, when considering whether an agency delay is unreasonable under 5 U.S.C. § 706(1), courts consider the six *TRAC* factors.  *TRAC*, 750 F.2d at 80.

### 1.  First and Second Factor: Rule of Reason and Presence of a Statutory Scheme

The time frame for agency decisions is governed by the rule of reason and informed by any statutory timetables.  In this case, neither the statute governing applications for adjustment of status for asylees nor the statute authorizing the Secretary of Homeland Security to make exemptions to the terrorism-related inadmissibility rules contains a statutory timeline.  *See* 8 U.S.C. § 1159(b); 8 U.S.C. § 1182(d)(3)(B)(i).  In the absence of an explicit timeline in the relevant statutes, the APA's general reasonableness standard applies.  *Al-Rifahe*, 776 F. Supp. 2d at 936.  The reasonableness of a delay in the context of an immigration application is a fact-dependent inquiry.  *See Yu*, 36 F. Supp. 2d at 935.[6]

In this case, because Ahmed's application was filed on February 14, 2006, denied on February 13, 2008, and reopened and put on hold on April 30, 2008, his application has been pending either six years or eight years.  The parties agree that Ahmed's involvement with the MQM, the conduct forming the basis of any inadmissibility determination, ended in 1997.  His application is nonetheless subject to an indefinite hold, and the government has given no indication of when and whether the hold might be lifted and his application adjudicated.

---

[6] Nevertheless, many courts grant summary judgment to applicants**,** concluding that delays in processing I–485 applications are unreasonable as a matter of law. *See, e.g., Han Cao v. Upchurch,* 496 F. Supp. 2d 569, 577 (E.D. Pa. 2007) (four-year delay presumptively unreasonable); *Liu v. Chertoff,* No. 06-1682, 2007 WL 2435157, at *11 (D. Or. Aug. 29, 2007) (over three-year delay unreasonable); *Elkhatib v. Butler,* No. 04-22407, 2005 WL 5226742, at *2 (S.D. Fla. June 7, 2005) (four-year delay unreasonable).

Nevertheless, Defendants contend that six or more years is not an unreasonable length of time to adjudicate Ahmed's application.  Defendants suggest that Ahmed may eventually benefit from an inadmissibility exemption, but Ahmed's case requires special consideration because it "involves participation in a group that is of such national security concern to the United States as to warrant categorization as a terrorist organization."  Def. Mot. at 19.  Defendants note that the exemption process requires research by law enforcement and intelligence agencies, vetting at various levels of government, and coordination among the Secretary of State, Attorney General, and Secretary of Homeland Security.  *See* 8 U.S.C. § 1182.  Defendants argue that delays in terrorism-related inadmissibility cases are often deemed reasonable because of this time-consuming process.  *See*, *e.g.*, *Debba v. Heinauer*, 366 F. App'x 696, 699 (8th Cir. 2010) (eight-year delay not unreasonable).  *Cf. AlShamsawi v. Holder*, No. 10-00194, 2011 WL 1870284, at *4 (D. Utah May 16, 2011) (six-year delay unreasonable).

The exemption process does require careful deliberation and the time-consuming coordination of numerous agencies.  However, Defendants' failure to provide any indication of when Ahmed can anticipate adjudication of his application is not reasonable.  *See Qureshi v. Napolitano*, No.11-05814, 2012 WL 2503828, at *5 (N.D. Cal. June 28, 2012).  "[F]or defendants to hold the application indefinitely in case they might, at some unspecified point in the future, consider an exemption does not constitute a 'rule of reason' that allows this court to find the delay reasonable."  *Mugomoke v. Curda*, No. 10-02166, 2012 WL 113800, at *7 (E.D. Cal. Jan. 13, 2012); *see also Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1144 (D. Ariz. 2008) ("The lack of a specific timetable does not mean that USCIS can take an infinite amount of time to process Plaintiff's adjustment of status application.").  The specific facts upon which USCIS must decide Ahmed's admissibility have been known to the agency for more than 15 years.  The

fact that the government has not instigated deportation proceedings against Ahmed undercuts its arguments regarding national security concerns, given that providing material support to a terrorist organization is a removable offense. *See* 8 U.S.C. § 1227(a)(4)(B).

Under these circumstances, I cannot deem the indefinite delay in this case to be reasonable. These two factors weigh in favor of Ahmed.

### 2. Third and Fifth Factors: Interests Prejudiced by Delay

The third and fifth factors overlap and require the Court to consider whether human health and welfare are at stake and the nature and extent of the interests prejudiced by the delay. *TRAC,* 750 F.2d at 80. Ahmed alleges that he is harmed by the delay because of, among other reasons, his inability to apply for citizenship and his inability to petition for immigration status on behalf of family members. Defendants contend that Ahmed is not prejudiced at all, and that in fact he is benefitted by the current adjudicatory hold because he may receive an exemption in the future. Because the alleged delay prevents an otherwise likely denial, Defendants argue Ahmed's other interests are not at issue.

The Court is not persuaded that the delay is beneficial to Ahmed. Other courts have recognized that "[t]he indefinite nature of the delay in adjudicating his application has real and not insubstantial effects on plaintiff's life and livelihood." *Al Karim v. Holder*, No. 08-00671, 2010 WL 1254840, at *4 (D. Colo. Mar. 29, 2010) (citing limitations of plaintiff's ability to travel and the financial and bureaucratic burdens of regularly filing for work and travel permits). "Perhaps most critically, the delay of the final adjudication of plaintiff's application necessarily delays his goal of becoming a U.S. citizen." *Id.*

Additionally, Ahmed recognizes the potential consequences of forcing the USCIS to decide his application, and yet he prefers adjudication over indefinite waiting. "[T]he fact that

he wishes to have the application adjudicated now also supports an inference that the harm of delay is not remote or insignificant."  *Mugomoke*, 2012 WL 113800, at *8.  Even a denial would allow Ahmed to pursue administrative and judicial review of an unfavorable decision whereas he currently cannot seek judicial review of continued inaction.  These factors weigh in favor of Ahmed's position.

### 3.  Fourth Factor: Effect of Expediting Action on Competing Agency Priorities

The fourth TRAC factor requires the Court's consideration of the effect of expediting delayed action on agency activities of a higher or competing priority.  *TRAC*, 750 F.2d at 80.  Defendants argue that their discretion includes whether, when, how, and at what pace to proceed in adjudicating an I–485 application and that the Court's involvement would intrude on that discretion.  It would also require them to truncate any consideration of a potential exemption that might benefit Ahmed and intrudes on the USCIS's competing interest in preserving its discretion to grant exemptions.

Defendants' argument that requiring a decision on Ahmed's application will intrude on the Secretary's discretion and USCIS's process for granting exemptions is not persuasive.  The Court has already acknowledged that the discretion to adjust Ahmed's status and grant him an exemption remains with immigration authorities, and they remain free to exercise that discretion as they wish.  The fact that an exemption in Ahmed's case may be premature is not dispositive; USCIS still has a duty to act.  5 U.S.C. §§ 555 & 706(1).  Because Ahmed merely seeks a ruling on his application regardless of the outcome, this factor weighs in Ahmed's favor.

### 4.  Sixth Factor: Bad Faith

The final *TRAC* factor is a reminder that the Court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.  *TRAC*, 750 F.2d at 80.  Regardless, there is no evidence that Defendants have acted in bad faith.

Viewing these factors in their totality, I conclude that the more-than-six-year delay in adjudicating Ahmed's application is unreasonable.  While Congress did not mandate a deadline for a decision on Ahmed's application, Defendants cannot hold the application indefinitely. Even if Ahmed could receive an exemption in the future, it is also possible he will never receive one.  Defendants have provided no evidence regarding the likelihood of an exemption in the future nor shown how rendering a decision would affect USCIS policies or the discretionary exemption process.  While the hold policy may potentially benefit applicants, here, greater benefit inures to Ahmed by adjudication.  While Ahmed waits on his application, he has undisputedly suffered prejudice.  In this case, the *TRAC* factors weigh in Ahmed's favor, and as such, he is entitled to summary judgment.

## VI. CONCLUSION

In summary, I will grant Defendants' motion to dismiss with respect to the claims under the Due Process Clause and the Declaratory Judgment Act.  I will deny Defendants' motion to dismiss and the motion for summary judgment on the APA claims for unlawful withholding and unreasonable delay of adjudication of Ahmed's adjustment of status application.  Additionally, because there are no disputed facts in this case and because I find that Ahmed is entitled to judgment as a matter of law, I will grant Ahmed's request for an injunction requiring Defendants to adjudicate Ahmed's application on or before 120 days from my judgment in this case.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to: